**2026-1795, 2026-1797**

# United States Court of Appeals for the Federal Circuit

**STRATUS MEDICAL, LLC,**

*Appellant*

v.

**AVANOS MEDICAL, INC.,**

*Appellee*

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in Case Nos.
IPR2024-01209 and IPR2024-01212

**RESPONSE BRIEF OF APPELLEE AVANOS MEDICAL, INC.**

WARREN J. THOMAS
GREGORY J. CARLIN
MEUNIER CARLIN & CURFMAN LLC
999 Peachtree St. NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700
wthomas@mcciplaw.com
gcarlin@mcciplaw.com

*Counsel for Appellee*

November 10, 2026

**<u>EXEMPLARY CLAIM OF U.S. PATENT NO. 10,966,782</u>**

1. A system comprising:

a radiofrequency probe; and

a radiofrequency neurotomy needle operable with the radiofrequency probe, the radiofrequency neurotomy needle comprising:

a conductive portion at a distal end of the radiofrequency neurotomy needle;

a tip configured to pierce tissue of a patient;

an elongate member comprising a lumen configured to accept the radiofrequency probe therein such that the radiofrequency probe physically contacts and is electrically connected to the conductive portion, the tip being at a distal end of the elongate member;

a filament electrically connected to the conductive portion and the tip due to physical contact of conductive materials at the distal end of the radiofrequency neurotomy needle such that the filament and the tip operate together as a single electrode, the filament being movable between a retracted position, in which the filament is at least partially in the elongate member, and a deployed position, in which at least a portion of the filament is out of the elongate member; and

an actuator interconnected to the filament to move the filament between the retracted position and the deployed position,

wherein the filament and the tip are configured to transmit radiofrequency energy from the radiofrequency probe and operate together as the single electrode in a monopolar mode when the filament is in the deployed position and the radiofrequency probe is accepted in the lumen and is in physical contact with the conductive portion at the distal end of the radiofrequency neurotomy needle.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1795; 26-1797

**Short Case Caption** Stratus Medical, LLC v. Avanos Medical, Inc.

**Filing Party/Entity** Avanos Medical, Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/10/2026

Signature: /s/Warren J. Thomas

Name: Warren J. Thomas

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Avanos Medical, Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

# TABLE OF CONTENTS

EXEMPLARY CLAIM OF U.S. PATENT NO. 10,966,782 .................................... i

CERTIFICATE OF INTEREST .................................... iii

TABLE OF CONTENTS .................................... v

TABLE OF AUTHORITIES .................................... vii

STATEMENT OF RELATED CASES .................................... xi

I. INTRODUCTION .................................... 1

II. COUNTER-STATEMENT OF THE ISSUES .................................... 3

III. COUNTER-STATEMENT OF THE FACTS .................................... 4

A. The patents concern thermal ablation systems and methods with familiar components. .................................... 4

B. The petitions proposed adding deployable filaments to Racz's needle to expand and control its ablation volume. .................................... 6

C. The parties disputed implementation, ordinary skill, and clinical operation through the trial evidence. .................................... 10

D. The Board issued separate decisions addressing the respective claims and objective evidence. .................................... 12

E. Stratus's appeal challenges the determinations on reasonable expectation of success, enablement, and nexus. .................................... 15

IV. SUMMARY OF THE ARGUMENT .................................... 17

V. STANDARDS OF REVIEW .................................... 20

VI. ARGUMENT .................................... 22

A. Substantial evidence supports the Board's findings of a reasonable expectation of success. .................................... 22

1. The Board reasonably interpreted the petitions' illustrations as examples of the proposed combination. .................................... 25

a. The petitions proposed a combination of teachings with illustrated examples, and the Board read them that way. .................................... 25

b. Stratus's contrary account relies on an altered quotation and overstates what the petitions required. .................................... 28

2. The Board grounded its reasonable-expectation findings in expert testimony, the patent documents, and ordinary skill. ............................... 30

3. The ’782 decision reasonably credited Racz’s disclosure over Dr. Russo’s testimony, and substantial evidence supports its reading. ........................ 37

a. The decision resolved a credibility contest that Stratus framed, by inference from the record rather than by a rule of law. ....................... 38

b. Substantial evidence supports the finding that Racz’s range applies to its illustrated RF neurotomy embodiments. ...................................... 40

4. The ’664 decision held Stratus to the claims it chose and sustained both claim groups on the petitioned combination. .......................................... 43

B. However the Board phrased the rule, its findings in each proceeding satisfy the collective-enablement requirement ....................................................... 46

1. Each decision resolved the factual obstacle on which Stratus’s enablement objection depends ................................................................. 47

2. Stratus’s authorities and asserted omissions provide no basis for reversal or remand. ........................................................................................ 50

C. Substantial evidence supports the Board’s findings that Stratus did not show a nexus between its objective evidence and the claimed inventions. ............ 53

1. The Board reasonably found that Stratus had not tied its evidence to a specific product that is the claimed invention. ....................................... 54

2. Stratus’s method-use showing does not resolve the nexus deficiency the Board identified. ............................................................................ 59

D. Alternatively, the unappealed decisions on the related ’688 patent preclude Stratus from relitigating the issues they necessarily decided. ....................... 60

1. The ’688 nexus findings preclude Stratus’s nexus challenge in both appeals. ........................................................................................... 62

2. The ’688 decisions’ reasonable-expectation-of-success determination precludes Stratus’s challenge for ’664 claims 1-9 and 20-25. ................. 66

VII. CONCLUSION ........................................................................................ 68

## TABLE OF AUTHORITIES

### Cases

*Allentown Mack Sales & Serv., Inc. v. NLRB*,
522 U.S. 359 (1998) .......... 39

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003) .......... 49

*Ancora Techs., Inc. v. Roku, Inc.*,
140 F.4th 1351 (Fed. Cir. 2025) .......... 54

*Avanos Med., Inc. v. Stratus Med., LLC*,
No. IPR2024-01210, 2026 WL 639675 (P.T.A.B. Mar. 6, 2026) .......... passim

*Avanos Med., Inc. v. Stratus Med., LLC*,
No. IPR2024-01211, 2026 WL 637597 (P.T.A.B. Mar. 6, 2026) .......... passim

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) .......... 60, 65

*Beckman Instruments, Inc. v. LKB Produkter AB*,
892 F.2d 1547 (Fed. Cir. 1989) .......... 46

*Campbell Soup Co. v. Gamon Plus, Inc.*,
10 F.4th 1268 (Fed. Cir. 2021) .......... 22, 54

*Comair Rotron, Inc. v. Nippon Densan Corp.*,
49 F.3d 1535 (Fed. Cir. 1995) .......... 66

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) .......... 21, 39, 41

*Elekta Ltd. v. ZAP Surgical Sys., Inc.*,
81 F.4th 1368 (Fed. Cir. 2023) .......... 22, 43, 48

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
8 F.4th 1331 (Fed. Cir. 2021) .......... 41

*FanDuel, Inc. v. Interactive Games LLC*,
966 F.3d 1334 (Fed. Cir. 2020) .......... 54, 58

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) .......... 53, 54, 55

*Function Media, L.L.C. v. Google, Inc.*,
708 F.3d 1310 (Fed. Cir. 2013) .......... 14

*Google LLC v. Hammond Dev. Int'l, Inc.*,
54 F.4th 1377 (Fed. Cir. 2022) .......... 61

*In re Chapman*,
595 F.3d 1330 (Fed. Cir. 2010) .......... 22, 45, 52

*In re Cree, Inc.*,
818 F.3d 694 (Fed. Cir. 2016) .......... 21

*In re Epstein*,
32 F.3d 1559 (Fed. Cir. 1994) .......... 35, 50

*In re Karpf*,
758 F. App'x 960 (Fed. Cir. 2019) .......... 54

*In re Keller*,
642 F.2d 413 (C.C.P.A. 1981) .......... 27

*In re Kumar*,
418 F.3d 1361 (Fed. Cir. 2005) .......... 51

*In re Magnum Oil Tools International, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .......... 45

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) .......... 27

*In re NuVasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) .......... 16, 60

*In re O'Farrell*,
853 F.2d 894 (Fed. Cir. 1988) .......... 31

*In re Payne*,
606 F.2d 303 (C.C.P.A. 1979) .......... 51, 52

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988) .......... 50

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) .......... 60

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) .......... 23, 24

*McGarigle v. U.S. Postal Serv.*,
904 F.2d 687 (Fed. Cir. 1990) .......... 17

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) .......... 52

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) .......... passim

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013) .......... 64

*Papst Licensing GmbH & Co. KG v. Samsung Elecs. Am., Inc.*,
924 F.3d 1243 (Fed. Cir. 2019) .......... 61

*Raytheon Techs. Corp. v. Gen. Elec. Co.*,
993 F.3d 1374 (Fed. Cir. 2021) .......... 21, 46, 50, 51

*Rockwell Int'l Corp. v. United States*,
147 F.3d 1358 (Fed. Cir. 1998) .......... 50

*Sandstrom v. Microsoft Corp.*,
No. 2024-1040, 2025 WL 40342 (Fed. Cir. Jan. 7, 2025) .......... 48

*Sierra Wireless, ULC v. Sisvel S.p.A.*,
130 F.4th 1019 (Fed. Cir. 2025) .......... 21

*Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*,
18 F.4th 1377 (Fed. Cir. 2021) .......... 24

*Therasense, Inc. v. Becton, Dickinson & Co.*,
593 F.3d 1289 (Fed. Cir. 2010), *reinstated in relevant part*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) .......... 48

*TQ Delta, LLC v. Cisco Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) .......... 31

*Uber Technologies, Inc. v. X One, Inc.*,
957 F.3d 1334 (Fed. Cir. 2020) .......... 35

*Velander v. Garner*,
348 F.3d 1359 (Fed. Cir. 2003) .......... 38, 39

*Volvo Penta of the Americas, LLC v. Brunswick Corp.*,
81 F.4th 1202 (Fed. Cir. 2023) .......... 55

*Waymo LLC v. Uber Techs., Inc.*,
870 F.3d 1350 (Fed. Cir. 2017) .......... 39

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
683 F.3d 1356 (Fed. Cir. 2012) .......... 54

**Statutes**

35 U.S.C. § 144 .......... 15

**Rules**

Fed. R. App. P. 16 .......... 15

## STATEMENT OF RELATED CASES

No other appeal from the same PTAB proceedings was previously before this Court. The following case is the only one known to Appellee that will be directly affected by this Court's decision in these cases: *Stratus Medical, LLC v. Avanos Medical, Inc.*, No. 1:25-cv-00546 (D. Del. filed May 2, 2025) (stayed pending the underlying IPRs and these appeals).

# I. INTRODUCTION

The Board correctly held every challenged claim of U.S. Patent Nos. 10,966,782 ("the '782 patent") and 10,925,664 ("the '664 patent") unpatentable. This appeal disputes little of what underlies that holding. Every ground rested on one combination: Racz's radiofrequency (RF) neurotomy needle and removable probe, modified to add the deployable filaments Fitz and Lee taught, to expand the ablation volume. Stratus conceded that the references collectively teach every limitation. It does not appeal the factual findings on motivation, teaching away, analogous art, or the level of skill. What remains turns on a manufacturing question and a nexus question, each resolved by factual findings that this Court reviews deferentially.

Stratus's manufacturing challenge rests on its premise that an RF neurotomy needle can be no larger than 16 gauge, leaving sidewall filament channels too thin to make. But Racz contradicts that premise, disclosing sizes from 30 gauge to 10 gauge for illustrated electrodes that Stratus conceded include RF neurotomy embodiments. The '782 decision rejected the 16-gauge ceiling after reading Racz and explaining why a prior-art document outweighed testimony prepared for litigation. The '664 decision found it immaterial because no '664 claim recites a needle or filament size.

Stratus also asks the wrong question. Reasonable expectation of success is measured against the claimed invention, not against the one example Avanos's expert, Dr. Tucker, illustrated and described as "not intended to be limiting." The Board took the petitions as written and measured them against the claims. Each decision read Dr. Tucker's figure as one example, credited his supported explanation, and found a reasonable expectation of success in making the combination through ordinary skill. The challenged patents themselves say nothing about how to make their lumens, confirming that a person of ordinary skill in the art (POSA) needed no such instruction.

Enablement likewise asks whether the prior art enables a POSA to make and use the claimed invention, not whether Dr. Tucker's example could be made at Stratus's asserted size. Avanos does not rely on a rule dispensing with that requirement, but Stratus's enablement objection, by its own account, relied on "the same reasons, based upon the same evidence" as its reasonable-expectation objection. Each decision resolved that manufacturing question on the evidence. However the Board phrased the rule, those findings satisfy it.

Stratus's asserted objective indicia evidence is disconnected from the claimed invention. Every claim requires an RF probe. Yet Stratus's evidence concerned its Nimbus needle, which it defined without the probe and sells separately. In its own claim chart, Stratus mapped the claimed probe to a separate

product. Each decision found that Stratus had not tied its evidence to a specific product that is the claimed invention. Stratus's assertion that long-felt need, copying, and praise require no nexus at all is an incorrect statement of law.

Additionally, Stratus may not relitigate what it has already lost. The same panel's final, unappealed decisions on the related '688 patent rejected the same presumption of nexus on the same evidence and found a reasonable expectation of success for the same combination against claims not limited to neurotomy. Those decisions independently foreclose Stratus's nexus challenge in both appeals and its manufacturing challenge for '664 claims 1-9 and 20-25.

The decisions rest on factual findings and weighing of the evidence that receive deferential review and are well supported by the record. Thus, this Court should affirm.

## II. COUNTER-STATEMENT OF THE ISSUES

1. Whether the Board reasonably interpreted the petitions' illustrations as examples of the proposed combination and substantial evidence supports its findings of a reasonable expectation of success, where the Board weighed Racz's disclosure against witness testimony for the '782 patent and applied the '664 claims' scope to the petitioned combination.

2. Whether those findings satisfy the requirement that the prior art enable a POSA to make and use the claimed invention, so that the Board's description of that requirement provides no basis for reversal or remand.

3. Whether substantial evidence supports the Board's findings that Stratus did not show a nexus between its asserted objective evidence and the claimed inventions, and, alternatively, whether the Board's final, unappealed decisions on the related '688 patent preclude Stratus from relitigating that issue.

## III. COUNTER-STATEMENT OF THE FACTS

### A. The patents concern thermal ablation systems and methods with familiar components.

The patents concern "thermal ablation systems and methods," including RF neurotomy. Appx0201 (1:28-31); Appx0255 (1:24-28). RF ablation, generally, uses electrical energy to heat and ablate tissue; RF neurotomy, specifically, cauterizes nerves to disrupt pain signals. Appx0201 (1:35-37, 1:42-44, 1:50-52); Appx0255 (1:32-34, 1:38-40, 1:50-52). Targets include nerves and tumors, and the needles may serve other medical procedures. Appx0201 (1:37-38); Appx0224 (48:28-47); Appx0255 (1:34-35); Appx0270 (31:6-24).

The patents describe needles with conductive tips and deployable filaments energized by a removable RF probe. The probe connects to an RF generator and enters the needle's lumen; physical contact conducts energy to the tip and filaments. Appx0205 (9:27-38); Appx0208 (15:53-64); Appx0257 (5:7-15);

Appx0258-0259 (8:57-63, 9:51-61). The patents explain that deployable filaments can overcome the practical limit on a conventional single needle's lesion size by providing multiple locations for RF energy delivery. Appx0205 (10:18-21, 10:53-67); Appx0257 (5:42-45, 6:7-17).




***'782 Patent – Fig. 16F***

Appx0294 (annotations in petition).

Every challenged '782 claim requires a radiofrequency probe and a radiofrequency neurotomy needle; claims 1 and 24 are independent. Appx0226-0228. They require the needle to be configured to receive the probe internally, with physical contact at the needle's distal conductive portion, allowing the filament and tip to transmit the probe's RF energy as a single electrode. Appx0226-0227. Similarly, the '664 patent's methods require inserting an RF probe into a needle's lumen and physically contacting the needle's distal conductive portion to energize a deployed filament. Appx0270-0271. Independent claims 1 and 21 are not limited

to neurotomy; dependent claims 10-19 and 26-29 concern ablating nerves. Appx0270-0271; Appx0072.

RF needles with exposed conductive tips energized through contact with removable RF probes were well known. Appx4247-4250 ¶¶54-57 (Ex-1031); Appx7219-7222 ¶¶54-57 (Ex-1034). So were deployable filaments. Appx4251-4255 ¶¶60-65; Appx7223-7227 ¶¶60-65; Appx0033-0034.

### B. The petitions proposed adding deployable filaments to Racz's needle to expand and control its ablation volume.

Every ground in both petitions rested on a combination of Racz, Fitz, and Lee. Appx0297-0298; Appx1353. Racz discloses a single-tip RF neurotomy needle with a removable RF probe, Fitz teaches that deployable filaments could improve such single-tip needles, and Lee discloses one implementation of an RF ablation device with multiple deployable filaments. Appx0289-0291; Appx1345-1347. The petitions used a shorthand to refer to the proposed combination: "Racz's modified device." Appx0024; *see also* Appx0285; Appx1341 (defining the phrase in the petitions to mean "Racz's cannula (10/33) modified by a POSA to include deployable filaments as disclosed in Fitz and Lee.").

Racz discloses an insulated cannula with a single exposed conductive tip, energized through physical contact with a removable probe connected to a signal generator. Appx3823 (Ex-1009, 5:26-51); Appx3822 (4:1-28); Appx0017-0020; Appx0074-0077.




Appx0019. Racz also teaches a curved tip to facilitate navigation around anatomical structures, and it describes other applications and claims delivery to a target region in the body. Appx3823-3824 (6:26-7:42); Appx3825. Racz specifies sizes from 30 gauge to 10 gauge; the parties disputed which sizes could serve RF neurotomy. Appx3824 (8:10-15); Appx0043-0045.

Fitz addresses inadequate coverage by single-tip RF neurotomy needles. Appx3859 (Ex-1011). It teaches that such needles “do not allow for adequate coverage of the target area,” causing lesions that extend only a few millimeters. Appx3861 ¶¶0004-0005. Fitz discloses “improved-coverage RF neurotomy instrumentation”—deploying multiple electrodes to “enhance the energy coverage area.” Appx3861 ¶0009; Appx3859; Appx0020-0021; Appx0077-0078.

Lee discloses the deployment technique: filaments that deploy outward around an RF ablation device’s tip. Appx3826 (Ex-1010); Appx3852 ¶¶0091-0092. Channels and ramps guide the filaments around a central element. Appx3854-3855 ¶¶0123-0131; Appx0021-0023; Appx0079-0081. As Stratus emphasizes, Lee

concerns uterine fibroids and has no removable RF probe. Stratus's Opening Brief ("OB") 19-21.




Appx0022.

Avanos's expert, Dr. Tucker, described deployable electrodes as well known in RF ablation, deploying from the tip, shaft, or both. Appx4258-4261 ¶¶69-72; Appx7230-7233 ¶¶69-72. He presented examples from eight references. Appx4259-4260; Appx7231-7232.

Thus, the petitions explained that Fitz and Lee teach "a known technique for solving a known problem in RF ablation devices," namely deployable filaments at the needle's distal tip, so that a POSA would have been motivated to modify Racz in view of Fitz and Lee. *See generally* Appx0308-0311; Appx1363-1366.

The explanation proceeded in two steps. First: "Lee's deployable filaments (22/1622) can be arranged around the inner perimeter of a cannula such that they surround and provide space for a central element." Second: "This would have confirmed to a POSA that Lee's deployable filaments (22/1622) would be easily arranged to accommodate Racz's centrally located removable probe (22/52)." Appx0311; Appx1366. The petitions proposed using Lee's "internal channels and ramps" "located in the cannula's tip" to guide filaments outward so that they would contact Racz's active tip and with it "function together as a single monopolar electrode." Appx0311-0312; Appx1366-1367. The petitions described implementing the filaments as "a matter of routine engineering, well within the level of ordinary skill in the art, and executable with a reasonable expectation of success." Appx0313; Appx1368.

Dr. Tucker illustrated "one example" of the combination and explained that a POSA would have implemented Lee's filaments "while preserving the functionality of Racz's cannula (10/33), active tip (14/38), and removable probe (22/52)." Appx0312; Appx1367. His two examples placed deflection surfaces integrally in Racz's tip or on a separate conductive mandrel secured to the shaft's end; both had distal channels. Appx0327; Appx1377; Appx4327 ¶169; Appx7289 ¶162.




***Dr. Tucker Declaration at ¶143 (showing one example of how a POSA would modify Racz to include Lee's filaments)***

Appx0027. He explained why the combination was routine engineering with a reasonable expectation of success. Appx4303 ¶140; Appx4305-4309 ¶¶143-148.

### C. The parties disputed implementation, ordinary skill, and clinical operation through the trial evidence.

A central dispute below was whether a POSA could manufacture Dr. Tucker's example at neurotomy dimensions. Stratus's clinical expert, Dr. Russo, testified that RF neurotomy needles must be 16-22 gauge—no larger than 16 gauge—because larger needles are too stiff to navigate anatomy and can damage delicate structures. Appx5066-5067 ¶¶155-163 (Ex-2001). Stratus's technical expert, Mr. Crosby, stated his "understand[ing]" that an RF neurotomy needle must be in the same size range; he assumed a 16-gauge maximum. Appx5239 ¶228 (Ex-2006); Appx5240 ¶¶233-235. He read Dr. Tucker's proposal as requiring sidewall channels. Appx5240 ¶235. He analyzed drilling, drawing, casting, and other manufacturing techniques, including for a separate tip, concluding that Racz's

modified device, as he understood Dr. Tucker's proposal, "would be either impossible to fabricate or doing so would require undue experimentation and have no reasonable expectation of success." Appx5237-5252 ¶¶221-276; Appx5237 ¶221; Appx5246-5247 ¶¶255-259.

Stratus's Responses then built their "impossible to make" argument (OB 47) on that ceiling, asserting that "[a]t its largest an RF neurotomy needle would be 16 gauge." Appx1278; Appx2057. Stratus argued that Dr. Tucker's testimony deserved little weight, citing his lack of clinical experience *performing* RF neurotomies on patients and testimony that he performed no calculations for the combination, had not built a prototype, was not a manufacturing engineer, and had not consulted one. Appx1264-1266, Appx1284; Appx2043-2045, Appx2063; Appx6589-6590 (Ex-2020, 87:15-88:5, 89:20-90:13); Appx0039-0040.

Avanos offered no new manufacturing opinions from Dr. Tucker; his reply declaration addressed the level of skill and copying. Appx4483-4499 (Ex-1042). Its Replies relied on ordinary skill, Lee's guidance, and the patents' silence about manufacturing, and disputed Stratus's size restrictions. Appx0640-0644; Appx1660-1664. Stratus's Sur-replies insisted that the petitions required sidewall channels, invoking Dr. Russo's clinical experience in interpreting Racz; they argued that the patents' different channel arrangement made the omission of manufacturing instructions immaterial. Appx0747-0751; Appx1758-1762.

At the joint hearing, Stratus conceded that the references *collectively* teach every limitation: "We're not disputing the presence of any particular claim limitation in the prior art collectively." Appx1106 (61:17-18). It disputed reasonable expectation of success and, through teaching away, motivation to combine. Appx1106 (61:20-22). Stratus's explained that its enablement objection rested on "the same reasons, based upon the same evidence" as its reasonable-expectation objection. Appx1101-1102 (56:23-57:2). Stratus maintained that claims requiring a neurotomy needle inherently limited its size. Appx1106 (61:5-11).

Stratus also asserted that objective indicia supported patentability of the claims, pointing to (purported) evidence of long-felt need, copying, praise, and commercial success. Appx0047; Appx0130. Its Responses defined the "Nimbus device" as an FDA-approved RF neurotomy needle with deployable tines, and they separately identified RF probes used with it. Appx1247; Appx2026. Stratus argued coextensiveness between the Nimbus device and the claimed invention to support a presumption of a nexus. Appx1307-1308; Appx2086-2087.

### D. The Board issued separate decisions addressing the respective claims and objective evidence.

The same panel decided four proceedings in March 2026: IPR2024-01209 concerning the '782 patent, IPR2024-01212 concerning the '664 patent, and IPR2024-01210 and IPR2024-01211 concerning the related '688 patent. Judge Mitchell authored the '782 decision, Judge Peslak the '664 decision, and Judge

Fitzpatrick both ’688 decisions; all four were unanimous. Appx0001; Appx0056; Appx0058; *Avanos Med., Inc. v. Stratus Med., LLC*, No. IPR2024-01210, 2026 WL 639675, at *1 (P.T.A.B. Mar. 6, 2026); *Avanos Med., Inc. v. Stratus Med., LLC*, No. IPR2024-01211, 2026 WL 637597, at *1 (P.T.A.B. Mar. 6, 2026).

The ’782 decision held claims 1-27 unpatentable. Appx0053-0054. It read Dr. Tucker’s illustration, and the two implementations he described, as mere examples of how a POSA could have combined the prior art. Appx0027-0030. It rejected Stratus’s narrow skill definition. Appx0016-0017. It found Dr. Tucker “qualified to offer testimony” and that his testimony “adequately supports Petitioner’s asserted reasonable expectation of success.” Appx0039-0040. Reading Racz’s size disclosure with its figures, the decision rejected the asserted 16-gauge maximum. Appx0043-0045. It found a reasonable expectation of success because known prior-art features could be combined through ordinary skill. Appx0045.

The ’664 decision held claims 1-29 unpatentable. It found claim 2 unpatentable on the ground adding Young ’965, not on the Racz-Fitz-Lee ground. Appx0097-0098; Appx0137 n.18; Appx0150-0151. Like the ’782 decision, it rejected Stratus’s skill definition. Appx0073. That finding was its first reason for rejecting Stratus’s request to discount Dr. Tucker’s testimony, and it found that his testimony “clearly is entitled to weight” and that he was “qualified to offer testimony in this proceeding.” Appx0107-0108. Like the ’782 decision, it rejected

the fabrication arguments premised on a 16-gauge maximum, but on claim-scope grounds: no claim recites a needle or filament size. It gave little weight to Stratus's experts' testimony inconsistent with the related '782 patent's disclosed filament range (approximately 0.06-1 mm) and, like the '782 decision, relied on Lee's and the '664 patent's silence on how to form their lumens, finding lumen-forming techniques within ordinary skill. Appx0115-0120.

Both decisions found that Stratus "failed to show that its objective indicia evidence bears a nexus to the claimed invention." Each found a "clear disconnect" between Stratus's coextensiveness position and its evidence: Mr. Crosby's testimony addressed the Nimbus device without the RF probe that every claim requires, and his chart mapped the probe limitation to a separate product. The '782 decision gave the evidence "no weight"; the '664 decision, "little, if any, weight." Appx0049-0050; Appx0132-0133.

The two '688 decisions are final and unappealed.[1] Each addressed grounds using the same Racz-Fitz-Lee combination and held all challenged claims unpatentable based on essentially the same factual findings and conclusions. *See generally* 2026 WL 639675; 2026 WL 637597.

[1] Avanos requests judicial notice of the PTAB dockets in IPR2024-01210 and IPR2024-01211 for the existence and final, unappealed status of the decisions. *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013).

### E. Stratus's appeal challenges the determinations on reasonable expectation of success, enablement, and nexus.

Although Stratus raised numerous arguments below (Appx1229-1231; Appx2008-2010), it appeals only reasonable expectation of success, enablement, and objective indicia. OB 1-2. On reasonable expectation of success, it challenges the asserted "categorical[]" preference for Racz over clinical testimony on needle size, the reading of Racz's sizes, an asserted change to the petitioned combination, and reliance on the patents' manufacturing silence. OB 2. Its reasonable-expectation and, implicitly, enablement arguments assume that every version of the proposed combination, "Racz's modified device," required filament channels in the cannula's sidewall. OB 53, 59-60, 76-77.

Other factual findings supporting unpatentability, however, stand *unchallenged* on appeal:

- The field of the invention is thermal ablation, which encompasses, but is not limited to, RF neurotomy. Appx0016; Appx0072 (rejecting Stratus's proposed limitation to RF neurotomy).
- Each decision adopted Avanos's proposed skill level and rejected Stratus's proposal that would have required education and experience in RF neurotomy specifically and a POSA who is both a physician performing RF neurotomy and an engineer. Appx0013; Appx0016-0017; Appx0068-0069; Appx0073.

- Lee is in the same field of the invention, Appx0024; Appx0110 (rejecting Stratus's contrary contention), and even if the field were limited to RF neurotomy, Lee is "reasonably pertinent to the problem facing the inventors" of the '664 patent. Appx0110.
- A POSA would have been motivated to combine Racz, Fitz, and Lee as proposed. Appx0038; Appx0089, Appx0106 (rejecting Stratus's challenge to motivation to combine). Deployable filaments on the distal tip of an RF ablation device were "a known technique for expanding and controlling the ablation volume," and a POSA would have recognized that deployable filaments "similarly would improve Racz's electrode cannula in the same way." Appx0032-0034. Racz's single-tip electrode "suffered from a known problem of inadequate energy coverage," and "Fitz and Lee addressed that problem by deploying multiple electrodes to increase and control the ablation volume." Appx0089.
- Racz and Lee did not teach away from the claimed invention. Appx0034-0037; Appx0127-0129.

Finally, Avanos objects to Stratus's use of post-decision materials to support the merits of these appeals—directly or as corroboration. This Court reviews the Board's decisions on the record on which the Board based them. *See, e.g.*, 35 U.S.C. § 144; Fed. R. App. P. 16; *In re NuVasive, Inc.*, 842 F.3d 1376, 1380 (Fed.

Cir. 2016); *McGarigle v. U.S. Postal Serv.*, 904 F.2d 687, 689 n.2 (Fed. Cir. 1990) (disregarding exhibits outside the MSPB record). The materials include an April 2026 notice of allowance and accompanying materials in Exhibit 2049 (Appx6910-6932) and the reissue application and two witness declarations in Exhibit 2052 (Appx7039-7064, Appx7065-7067, Appx7068-7071). Stratus acknowledges these did not exist when the Board issued the decisions and were not part of the record on which the Board relied. OB 19 n.2, 46 (referring to these as "[s]ubsequent developments"). Stratus invokes these materials in its factual narrative and to suggest disagreement with the Board's reasoning. OB 14-15, 19, 46. Their inclusion in the Joint Appendix does not make them evidence before the Board. This Court should disregard them in reviewing the merits of the appealed decisions.

## IV. SUMMARY OF THE ARGUMENT

Stratus's appeal measures the wrong thing. The petitions proposed a combination of teachings—Racz's RF neurotomy needle and removable probe, with deployable filaments as taught by Fitz and Lee—illustrated by examples. Stratus's arguments on reasonable expectation of success and enablement rest on reading the petitions as requiring every version of "Racz's modified device" to have sidewall filament channels at a 16-gauge maximum. But reasonable expectation of success is measured against the claimed invention. Collective

enablement likewise concerns whether the prior art enables a POSA to make and use the claimed invention. Stratus instead measures both requirements against Dr. Tucker's example at Stratus's asserted 16-gauge maximum.

The findings of a reasonable expectation of success rest on substantial evidence because the Board measured the right thing. Each decision reasonably read the petitions as proposing a combination of teachings illustrated by examples, and Stratus's contrary account relies in part on a petition quotation it altered. Four sources support forming the distal channels that both of Dr. Tucker's examples share: his explanation; Lee's own filament passages within the cannula wall; the patents' silence on how to form their lumens, evidence of what a POSA knew; and the unchallenged level of ordinary skill. The '782 decision resolved the credibility contest Stratus itself framed, between Dr. Russo and Racz, by reading Racz and explaining why a prior-art document outweighed testimony prepared for litigation—reasoned weighing, not a rule of law. The '664 decision found the same premise immaterial because no '664 claim requires a needle or filament size, and its findings that lumen-forming techniques were within a POSA's knowledge and that the combination was a simple substitution sustain both claim groups.

Stratus's enablement issue is its manufacturing objection under a different label. The prior art as a whole must enable a POSA to make the claimed invention. Stratus never argued that any reference fails to enable its own disclosure. Its

objection rested instead, by its own account, on "the same reasons, based upon the same evidence" as its reasonable-expectation objection. Each decision resolved that obstacle on the evidence: Dr. Tucker's testimony that a POSA could make the combination through ordinary skill and routine engineering, and the patents' own omission of the very manufacturing detail Stratus demands of the prior art. An express enablement finding is not invariably required where the findings resolve the asserted obstacle. Stratus's authorities ask the same make-and-use question without the factors Mr. Crosby applied, and a remand would only ask the same manufacturing question again.

Stratus's objective-indicia argument fails as well. Each decision found, on Stratus's own submissions, that Stratus had not tied its evidence to the claimed invention, and substantial evidence supports that finding. Nexus is required for every indicium Stratus asserted, and its contrary assertion for long-felt need, copying, and praise is an incorrect statement of law. The presumption Stratus sought requires a specific product that is the claimed invention. Stratus defined the Nimbus device as the needle, sells the probes separately, and mapped the claimed RF probe in its own chart to a separate product—the "clear disconnect" both decisions found. Embodiment is not coextensiveness, and Stratus's answer that the components need not be sold together does not make the needle, or any specific product, the claimed invention. Stratus's method-use showing defends the same

product-based presumption, and the ’664 method claims themselves require inserting and operating the probe.

Alternatively, the two final, unappealed decisions on the related ’688 patent preclude Stratus from relitigating the nexus issue in both appeals and the manufacturing issue for the ’664 patent’s non-neurotomy claims. Each ’688 decision—with the same parties, evidence, and panel—rejected the same presumption of nexus, for the same four indicia, because the chart failed to map the required probe to the Nimbus device. That determination was necessary to each judgment, and claim differences do not change the question decided. Each ’688 decision also found a reasonable expectation of success in making the combination with peripheral filaments while retaining Racz’s central RF probe, a finding necessary to its judgment. Because the ’688 claims and ’664 claims 1-9 and 20-25 are limited neither to neurotomy nor to a needle size, that finding settles the manufacturing question for those ’664 claims, whatever legal label Stratus attaches to it.

Avanos asks this Court to affirm both decisions. If this Court finds a ground requiring relief, the relief should be confined to the affected issues and claims.

## V. STANDARDS OF REVIEW

Avanos generally accepts Stratus’s review framework (OB 49-50) but disputes Stratus’s characterization and application of those standards.

The decisions made factual findings about the prior art's teachings and reasonable expectation of success (Section VI.A), contrary to Stratus's characterization (OB 52). Those findings receive substantial-evidence review. *See* OB 50-51. Evidentiary and credibility determinations receive abuse-of-discretion review. *Sierra Wireless, ULC v. Sisvel S.p.A.*, 130 F.4th 1019, 1024 (Fed. Cir. 2025). The Board's reading of what the petitions fairly present also receives abuse-of-discretion review. *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1376 (Fed. Cir. 2023).

Avanos bore the preponderance burden below. On appeal, this Court examines the record as a whole (OB 51) to decide whether substantial evidence supports the findings: "If two 'inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB]'s decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence.'" *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016)).

Prior-art enablement remains a legal question based on factual findings. *Raytheon Techs. Corp. v. Gen. Elec. Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021). The Board's decisions made those findings (Section VI.B), contrary to Stratus's premise (OB 50). The party attacking an agency determination bears the burden of

showing that an asserted error was harmful. *In re Chapman*, 595 F.3d 1330, 1338 (Fed. Cir. 2010).

The decisions made coextensiveness findings (Section VI.C), contrary to Stratus's characterization (OB 52-53). Coextensiveness, and therefore whether a presumption of nexus between the objective evidence and the claimed invention is appropriate, is a question of fact. *Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1277 (Fed. Cir. 2021).

Review rests on the Board's actual grounds, and deference neither supplies missing reasoning nor insulates legal error (OB 49, 53). Sections VI.A-VI.C explain why the applicable legal requirements are satisfied and the factual findings survive review under the governing standards.

## VI. ARGUMENT

### A. Substantial evidence supports the Board's findings of a reasonable expectation of success.

Each decision found a reasonable expectation of success in making the petitioned combination, and substantial evidence supports those findings. Reasonable expectation of success is a factual question reviewed for substantial evidence. *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1374 (Fed. Cir. 2023); *see* Section V. In some cases, the evidence establishing a motivation to combine may establish a finding of reasonable expectation of success. *Elekta*, 81 F.4th at 1377. As Section III.E explains, Stratus does not challenge either

decision's motivation or ordinary-skill findings. The decisions rejected Stratus's proposed level of skill as too narrow, in part because it excluded physicians and other advanced degree holders who research and design ablation devices but "do not actually operate on patients." Appx0017; Appx0073. Section VI.A.1 addresses the petitions; Section VI.A.2 the common feasibility evidence; and Sections VI.A.3 and VI.A.4 the '782 and '664 findings, respectively.

Stratus invokes *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016), for the petitioner's burden to show a reasonable expectation of success in the proposed combination, which Stratus equates with "Racz's modified device." OB 70 n.4; *see also* OB 71 ("The petition proposed 'Racz's modified device' as an RF neurotomy device to reach these claims (and all others)."). Stratus also invokes *Intelligent Bio-Systems*'s particularity requirement to contend that the petitions had to present "Racz's modified device" with "considerable specificity," making sidewall channels "an absolutely essential feature" of every version. OB 76. Below, Stratus argued that the petitions *lacked* specificity—the opposite of its position here. *Compare* OB 76, *with* Appx1271-1272, *and* Appx2050-2051.[2]

[2] At OB 76, Stratus repeats its earlier misquotation of Rule 104 as "requiring [a] petition to be 'precise' and 'with specificity,'" although the Board already explained that the rule "does not include the phrase 'with specificity.'" Appx0026 n.14.

But *Intelligent Bio-Systems* defined success by "the likelihood of success in combining references to meet the limitations of *the claimed invention*." 821 F.3d at 1367 (emphasis added). Stratus recognizes that the question was how the filament teachings "could be incorporated into Racz in a way that would result in the claimed invention." OB 76. Yet it measures reasonable expectation of success by whether "Racz's modified device" and its sidewall channels could be made. OB 34, 38, 47, 71-72, 77, 87. Section VI.A.1 explains why the proposed combination of teachings, for its stated neurotomy purpose and measured against the claimed invention, was not so limited. Stratus itself describes the claimed devices as "of a fundamentally different design … not requiring the impossible-to-manufacture sidewall channels required of 'Racz's modified device.'" OB 40-41. *Intelligent Bio-Systems* also explains: "Failure to consider the appropriate scope of the patent's *claimed invention* in evaluating the reasonable expectation of success constitutes a legal error …." 821 F.3d at 1367 (cleaned up, emphasis in original); *see* OB 70; *see also Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021) ("The reasonable-expectation-of-success analysis must be tied to the scope of the claimed invention."). Stratus's framing would commit that error.

### 1. The Board reasonably interpreted the petitions' illustrations as examples of the proposed combination.

Stratus asks whether the Board "changed the nature of the prior-art combination set forth in the IPR petition." OB 2. It did not. The Board's judgments concerning what arguments were fairly presented in Avanos's petitions are reviewed for abuse of discretion:

> An abuse of discretion is found if the decision: (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.

*Netflix*, 84 F.4th at 1376.

#### *a. The petitions proposed a combination of teachings with illustrated examples, and the Board read them that way.*

The '782 decision distinguished the petition's glossary definition from its illustration and rejected Stratus's objection to multiple implementations. Appx0029-0031, Appx0030 n.15. The '664 decision likewise treated Avanos's illustrated device as exemplary and rejected Stratus's demand for dimensioned views from distal to proximal end. Appx0121-0124.

The petitions proposed adding deployable filaments as taught by Fitz and Lee to Racz's RF neurotomy cannula to expand and control the ablation volume, while retaining the removable probe. Appx0290, Appx0311; Appx1366. They

proposed the perimeter arrangement to preserve the probe's function, omitting Lee's central filament and leaving room for the probe. Appx0326; Appx1376. Stratus says the petitions required filaments outside the main lumen. OB 59, 76. But the petitions relied on Lee's withdrawn filaments, housed within Lee's cannula lumen, to show retraction at least partially into the elongate member; they specified an actuator that left Racz's probe lumen unobstructed. Appx0323, Appx0331-0332; Appx1373, Appx1379, Appx1382.

The petitions expressly described "one example" and "a variety of ways" to implement the filaments. Appx0312; Appx0326; Appx1376. The '782 decision quoted Dr. Tucker's statement: "This figure is not intended to be limiting or represent the only way Racz's device would have been modified …." Appx0027; Appx4305 ¶143. Dr. Tucker described channels formed integrally with the cannula's tip and channels in a separate conductive tip receiving the probe. Appx4306 ¶145 ("first example"); Appx4308-4309 ¶147 ("second example"). He also explained gauge variation to accommodate the filaments while preserving the probe. Appx4307-4308 ¶146. Both implementations retained distal channels, and the petitions premised their mapping on probe-to-shaft contact along the shaft's full length, including the tip. Appx0320, Appx0327; Appx1377, Appx1384. RF energy would pass by physical contact from the probe to the conductive tip and from the tip to the filaments. Appx0328-0329.

At the hearing, Avanos explained that Lee's channels at the tip guide filaments and need not extend along the entire needle. Appx1057-1058 (12:20-13:16). Dr. Tucker likewise testified that Lee's perimeter arrangement left space for the central element. Appx6613 (182:2-7).

The '782 decision also recognized the bent-tip starting embodiment of Racz but read the proposal as indifferent to curvature and "not conditioned on Racz's modified device having a straight tip or a bent tip." Appx0035 n.16, Appx0036 & n.17.[3] It explained that Racz showed straight-tipped RF devices were known. Appx0036.

A petition must identify its grounds and supporting evidence with particularity, map the claim elements, and explain the evidence's relevance. *Netflix*, 84 F.4th at 1377. Each decision applied the combination-of-teachings principle in rejecting Stratus's vagueness challenge: the '782 decision applied *In re Keller*, 642 F.2d 413, 425 (C.C.P.A. 1981), and the '664 decision applied *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012), for the rule that obviousness turns on the references' combined teachings rather than bodily incorporation of their structures. Appx0031; Appx0123. The decisions correctly found the petitions met that standard.

---

[3] Stratus does not challenge this reading on appeal.

*b. Stratus's contrary account relies on an altered quotation and overstates what the petitions required.*

The petitions said: "Lee's deployable filaments (22/1622) can be arranged around the inner perimeter of a cannula such that they surround and provide space for a central element." Appx0311; Appx1366. Dr. Tucker's supporting declarations likewise described the inner perimeter of a cannula as Lee's teaching. Appx4303 ¶140; Appx7273 ¶140. In its Opening Brief, Stratus changes the article to *the*, using and emphasizing "***around the inner perimeter of <u>the</u> cannula***" to describe what the petitions proposed. OB 27, 59, 76 (underline added).

At OB 59 and 76, Stratus uses a signaled ellipsis to join that description of Lee's teaching to the application clause, "to accommodate Racz's centrally located removable probe (22/52)." The changed quotation and the joined clauses collapse the two steps: Lee supplies an arrangement around a central element; the petitions explain how that teaching accommodates Racz's retained probe. Appx0311; Appx1366. The '782 decision preserved that sequence in explaining Dr. Tucker's testimony. Appx0041. Stratus also uses the altered phrase in its OB 27 caption to describe its own drawing.[4]

Stratus also cites the petitions' accurate statement that filaments, channels, and ramps would be arranged "around the internal perimeter of Racz's cannula

[4] Stratus also emphasizes "cannula" in its quotation of Appx0313 without identifying the added emphasis. OB 28.

(10/33).” Appx0326; OB 59, 76. Those petition passages apply Lee’s teaching to Racz’s cannula to accommodate Racz’s removable probe. Appx0326; Appx1376.

Stratus faults the Board’s reliance on the bodily-incorporation principle for reasonable expectation of success. OB 75-76. It asserts: “Thus, the channels in the sidewall of Racz’s cannula is an absolutely essential feature of ‘Racz’s modified device.’” OB 76. All versions, it insists, require that feature “at least for some appreciable, if not the entire, length” of the cannula. OB 77. That argument treats the illustrated device as the benchmark. The ’782 decision identified the defined combination and found that unarticulated “additional permutations of how the prior art might be combined” did not undermine Avanos’s challenge. Appx0030 n.15. The ’664 decision found the demanded details directed to unclaimed structures. Appx0123. The integral-tip and separate-tip alternatives left implementation choices to a POSA without fixing every routing detail or dimension. Appx0326-0327; Appx1376-1377; Appx4308 ¶146. The Board correctly applied the principle: a POSA could reach the claimed invention without bodily incorporating Lee’s structure. Appx0031; Appx0123-0124.

The ’664 decision addressed a similar framing in its teaching-away analysis. Stratus argued below that a POSA would regard a bent tip as “an essential feature of Racz’s probe” when reading Racz. Appx0126. The decision directed the inquiry to whether Racz or Lee taught away from the claimed invention. Appx0127-0128.

Stratus itself calls the implementations “two examples of this combination (Racz’s modified device)” but says both were neurotomy needles requiring sidewall tunnels. OB 70 n.4. Stratus states that sidewall channels extend “for at least some appreciable length near the tip” in both examples. OB 60; *see* Section VI.A.2 (addressing those channels’ feasibility).

Thus, each decision correctly read the petitions as proposing a combination of teachings illustrated by examples, not limited to the illustrated devices. That reading was, at a minimum, reasonable. Appx0029-0031; Appx0121-0123.

**2. The Board grounded its reasonable-expectation findings in expert testimony, the patent documents, and ordinary skill.**

At OB 60, Stratus identifies the feature common to both examples: distal sidewall channels receiving the filaments while leaving room for the removable probe. Four sources of evidence support a reasonable expectation of success in making those channels while retaining the probe and conductive contact described in Section VI.A.1: Dr. Tucker’s supported explanation, Lee’s guidance, the patents themselves, and the level of ordinary skill.

Each decision measured the experts’ testimony against the documents. First, the ’782 decision found Dr. Tucker’s testimony “not a bald conclusion” but “supported extensively” by his explanation of what the references taught and why and how a POSA would combine them. Appx0039, Appx0041. His declarations explained channels integral with the cannula’s tip and channels in a separate

conductive tip attached to the cannula, preserving the removable probe and transmitting energy through physical contact to the tip and filaments. Appx4306-4307 ¶¶144-145, Appx4308-4309 ¶¶147-148; Appx7276-7277 ¶¶144-145, Appx7279-7280 ¶¶147-148. Those explanations answer Stratus's "conclusory" characterization. OB 47, 60-62. *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019), requires explained evidentiary support, and Dr. Tucker supplied it.

The '664 decision likewise tied the weight of Dr. Tucker's testimony to its support. It accorded his motivation testimony "substantial weight" because Racz, Fitz, and Lee supported his explanation that deployable electrodes would expand and control ablation volume. Appx0089. In addressing fabrication, the '664 decision cited his declaration to explain the illustrated arrangement, then relied on preserving the components' established functions in reaching its simple-substitution finding. Appx0119 (citing Appx7275-7277 ¶¶143-144), Appx0120-0121.

Stratus's manufacturing-experience and prototype objections do not answer Dr. Tucker's supported explanation. OB 35-36, 39, 61-62. Each decision credited his testimony despite those objections below. Appx1265-1266, Appx1277; Appx2044-2045, Appx2056. "Obviousness does not require absolute predictability of success"; a reasonable expectation of success suffices. *In re O'Farrell*, 853 F.2d

894, 903-904 (Fed. Cir. 1988). Dr. Tucker conceded that he is not a manufacturing engineer, consulted none, and neither built a prototype nor performed feasibility calculations, Appx6589 (87:15-88:5); Appx6590 (89:20-90:13), but each decision still found him qualified and his testimony adequate to support a reasonable expectation of success. Appx0039 ("well qualified"), Appx0040; Appx0108.[5] He also testified that filament tubes could be manufactured within the sidewall by drilling, laser drilling, or molding. Appx6599 (126:20-127:9). His original explanation answers Stratus's "never explained how" assertion. OB 61.

Nor was Mr. Crosby's impossibility testimony undisputed (OB 2, 47): each Reply called his manufacturing assertions "unsupported" and answered that the challenged patents themselves suggest the tip and channels can be made. Appx0644; Appx1663-1664.

Second, the '782 decision credited Dr. Tucker's explanation that Lee's perimeter arrangement could accommodate Racz's central removable RF probe. Appx0041. Lee supplies concrete structural guidance. Paragraph 0118 describes filament passages entirely within the cannula wall and a delivery member that may be metal; paragraph 0119 describes a metal mandrel between plastic members; and paragraph 0125 places wire passages around a central axial member in an

---

[5] Stratus does not challenge either decision's factual findings on the level of skill in the art or that Dr. Tucker was qualified to testify from a POSA's perspective. Appx0017, Appx0039-0040; Appx0073, Appx0107-0108.

insulative plastic cannula. Appx3854. Paragraph 0118 thus answers Stratus's argument below that Lee does not teach channels "fully within the sidewall." Appx0748; Appx1759.

Dr. Tucker applied Lee's teachings to both example implementations. For the integral tip, he placed the channels around the probe lumen. For the separate tip, he explained how a metal mandrel could define channels and deflection surfaces, attach to the cannula, and conduct energy by contact with the retained probe and filaments, omitting Lee's distal insulating member. Appx4306-4307 ¶145, Appx4308-4309 ¶147; Appx7277 ¶145, Appx7279 ¶147. Mr. Crosby challenged the separate tip's channel length, alignment, and interface, as well as metal fabrication and conductive polymers. Appx5245-5247 ¶¶252-259. But Lee's metal structures and Dr. Tucker's conductive-contact explanation answer Mr. Crosby's material and connection objections. Mr. Crosby's remaining objection is scale: he considered Lee's device, designed for uterine fibroids, to be larger than practical for RF neurotomy, though he found no dimensions in Lee. Appx5239 ¶¶228-230.

Third, the '782 decision found that the '782 patent "itself does not teach how to manufacture its claimed invention." The '782 decision found that omission "[c]onsistent with" Dr. Tucker's testimony that the components would be used "according to their established functions, which would have been known to a

POSA" and noted, "Patent Owner does not dispute this point." Appx0042 (quoting Appx4306 ¶144). Stratus had explained below that its invention lacked the long, narrow sidewall channels it attributed to the proposed combination. Appx0747-0748; Appx1758-1759. The '782 decision found that explanation insufficient to show why the differences excused the '782 patent's silence while making the petition's omission fatal. Appx0042 n.21. At OB 72-75, Stratus repeats that distinction. But repeating that distinction does not supply the explanation the decision found missing. Appx0042 n.21. The '782 patent's undisputed silence on manufacture thus remains, as the decision found, consistent with Dr. Tucker's testimony that a POSA would have known how to use these components according to their established functions. Appx0042.

The '664 decision separately found that Lee's and the '664 patent's silence on forming internal lumens supports a reasonable expectation of success because the techniques for making those lumens would have been within a POSA's knowledge. Appx0118. The '664 patent describes an inner member with "channels along its periphery" in which the filaments lie, "with the elongate member forming a portion of the lumens." Appx0262 (16:54-63). *Contra* OB 74-75.

Both decisions properly treated the challenged patents' manufacturing silence as evidence of what a POSA knew about making the claimed structures: the detail Stratus demands of the petitions and asserted art is missing from the

challenged patents, too. Appx0042; Appx0118. In *In re Epstein*, the applicant's failure to "provide the type of detail in his specification that he now argues is necessary in prior art references" supported the Board's finding that "one skilled in the art would have known how to implement the features of the references and would have concluded that the reference disclosures would have been enabling." 32 F.3d 1559, 1568 (Fed. Cir. 1994); *see* Section VI.B. Similarly, in *Uber Technologies, Inc. v. X One, Inc.*, the specification was "entirely silent on how to transmit user locations and maps from a server to a user's mobile device," which suggested "that a person of ordinary skill in the art was more than capable of selecting between the known methods of accomplishing this." 957 F.3d 1334, 1339 (Fed. Cir. 2020) (reversing the Board's nonobviousness determination as to that limitation). The patents' silence thus corroborates Dr. Tucker's testimony and, with Lee's guidance, each decision's finding of a reasonable expectation of success. Appx0042; Appx0118.

The '664 decision also tested Stratus's filament-size objection by comparing the related '782 patent's disclosed filament range of approximately 0.06-1 mm with Stratus's experts' testimony that filaments within part of that range were unsuitable for RF neurotomy. It gave that testimony "little weight" because it did not align with the '664 or '782 patent's disclosure. Appx0117-0118. The '664 decision also noted Young '965's 0.05-0.3 mm filament range (preferably 0.1-0.2

mm), citing the petition's argument that Lee's filaments could be made as small as 0.2 mm wide. Appx0117 n.16 (quoting Appx3871 ¶30).

Finally, the '782 decision concluded that the known features could be combined through ordinary skill. Appx0045. The '664 decision found a simple substitution of known components performing known functions to achieve an expected result. Appx0121. Mr. Crosby's process objections do not undermine those findings. The '782 decision was "not persuaded" that Racz's modified device "would be extremely challenging, if not impossible, to fabricate," because it rejected Stratus's "foundational argument" that the device could not be larger than 16 gauge. Appx0045. Mr. Crosby's manufacturing objections depended on a needle no larger than 16 gauge; his drilling example assumed a 0.1 mm hole running at least 5 cm through a roughly 0.22 mm wall. Appx0119; Appx5240 ¶235. Mr. Crosby considered a straight tip too but said Racz's bend or curve would make fabricating its sidewall channels harder. Appx5238 ¶225. Sections VI.A.1(a) and VI.A.1(b) explain why no bend was required. *See also* Appx0043 n.22 (explaining that "the tip could be altered as needed"). The Board's findings instead draw on Lee's perimeter arrangement, Dr. Tucker's explanation of its adaptation, and the patents' reliance on ordinary fabrication knowledge. Appx0041-0042, Appx0045; Appx0118, Appx0120-0121.

At OB 75, Stratus argues that motivation alone cannot supply a reasonable expectation of success and that the manufacturing evidence does not overlap. The overlap here is concrete: Lee's deployable filaments provided the reason to expand and control ablation volume, while its perimeter passages and conductive structures supplied the means Dr. Tucker explained for preserving the probe and energizing the filaments. Appx4303-4304 ¶¶139-141, Appx4306 ¶144, Appx4308-4309 ¶147; Appx7273-7274 ¶¶139-141, Appx7276-7277 ¶144, Appx7279 ¶147. Each decision expressly addressed fabrication—the '782 decision at Appx0042-0045, and the '664 decision at Appx0118-0121. The Board's express treatment of Stratus's asserted patent differences and fabrication objections refutes its charge of "troubling inattention to details and unwillingness to engage in the key issues" (OB 74). Appx0042 n.21.

#### 3. The '782 decision reasonably credited Racz's disclosure over Dr. Russo's testimony, and substantial evidence supports its reading.

At OB 58, Stratus says that its expectation-of-success case "rested on a physical premise"—that "[a]n RF neurotomy needle can be no larger than 16 gauge." *See also* OB 40 (calling whether "Racz's modified device" could be larger than 16 gauge "that linchpin issue"). Stratus's Section V.C.2 runs together three questions: the weight and credibility assigned to the evidence, reviewed for abuse of discretion, including legal error; what Racz discloses, reviewed for substantial

evidence; and whether the ’782 decision applied a rule of law. OB 63-69. The decision withstands all three challenges.

*a. The decision resolved a credibility contest that Stratus framed, by inference from the record rather than by a rule of law.*

In its Sur-reply, Stratus called Dr. Russo “the more credible source” and stressed that he *alone had held* an RF neurotomy needle and “placed it in position in a live patient”; and it dismissed Racz’s gauge-range sentence, if read to encompass neurotomy, as “a gratuitous attempt to broaden Racz’s disclosure beyond reality.” Appx0750-0751. Dr. Russo expressly disputed “the IPR Petitions and Dr Tucker” on Racz’s teaching, concluding that “Racz does not teach or fairly suggest” that its devices could use sizes outside 16-22 gauge and remain suitable for RF neurotomy. Appx5066 ¶157, Appx5068 ¶168. Stratus thus presented a credibility contest over Racz’s RF neurotomy teaching, despite its assertions here that Dr. Russo’s testimony “answered a different question” and that there was “no credibility contest to resolve.” OB 69.

The factfinder’s discretion to weigh competing evidence requires a reasoned choice, assessed in the context of the decision as a whole. Discretion includes assigning each item of evidence appropriate weight. *Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003). In reviewing reasonable expectation of success, this Court accordingly held: “We cannot say the Board abused its discretion in giving

more weight to the scientific literature than to [the expert's] testimony." *Id.* at 1373. Exercising that discretion requires "logic and sound inference from all the circumstances," with findings a reasonable factfinder could accept. *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 377, 379 (1998); *see id.* at 378-380 (addressing alleged systematic undervaluation of evidence and reversing and remanding with instructions to deny enforcement).

Whether the weighing meets that requirement must be judged from the decision's reasoning in context. *Elbit*, 881 F.3d at 1359 ("[W]e will not find legal error based upon an isolated statement stripped from its context" (quoting *Waymo LLC v. Uber Techs., Inc.*, 870 F.3d 1350, 1361 (Fed. Cir. 2017))). A decision explaining through sound record inferences why it credits a reference over testimony prepared for litigation exercises the discretion *Velander* recognizes and meets *Allentown Mack*'s standard. One sentence cannot be isolated to create a rule of law.

The '782 decision read Racz's express size disclosure as applying to its illustrated RF neurotomy embodiments, then weighed that disclosure against the contrary declarations: "However, we find Racz—an issued patent—to be inherently more credible than witness testimony prepared specifically for litigation, and we give it more weight." Appx0044-0045. That reasoning answers Stratus's "categorical rule of evidence" charge and its demand for de novo review. OB 52,

63, 66. The Board could reasonably credit Racz's disclosure of larger neurotomy needles over litigation testimony imposing a 16-gauge ceiling. Appx0044-0045. Stratus's descriptions of Dr. Russo's testimony as "undisputed" and of the decision as crediting "a reference over unrebutted clinical testimony" overlook the conflict between Racz and the declarations. OB 64-65, 67. The Reply disputed the 16-gauge premise as "unsupported" and countered it with Racz and other documents. Appx0643.

The Board's weighing was correct and, at a minimum, not an abuse of discretion: it was neither based on the erroneous conclusion of law Stratus alleges, nor clearly unreasonable. *Netflix*, 84 F.4th at 1376.

*b. Substantial evidence supports the finding that Racz's range applies to its illustrated RF neurotomy embodiments.*

The range at issue follows Racz's discussion of variations in the electrode geometries of Figures 1-3: "Various sized electrodes can be made, from extremely small gauges (e.g., 30 gauge) to much larger sizes (e.g., 10 gauge)." Appx0044. Stratus conceded that Figures 1 and 2 depict RF neurotomy embodiments; its own Response said that "Racz discloses an RF neurotomy 'needle or cannula.'" Appx0044 (quoting Appx1253). The decision expressly rejected Stratus's argument that the 10-gauge teaching "must be referring … to *non*-neurotomy applications" because the range applied to those illustrated embodiments. Appx0044. That

reasoning refutes Stratus's assertion that the Board "never even acknowledged Racz's non-neurotomy applications." OB 67.

Stratus's disagreement about what Racz teaches "presents a question of fact that is reviewed for substantial evidence." *Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1347 (Fed. Cir. 2021) (when the evidence permits competing reasonable readings of a reference, the choice between them is "the epitome of a decision that must be sustained upon review for substantial evidence" (quoting *Elbit*, 881 F.3d at 1356)). Racz's text supplies the basis for the gauge finding that Stratus says lacks support in Racz, any other document, or any witness. OB 66; Appx0044.

The '782 decision called the Reply's showing "persuasive evidence that 16 gauge is not the maximum size for neurotomy" and quoted the disclosure of Racz on which Avanos relied "[i]n particular." Appx0043-0044. Avanos's Reply also invoked the '782 patent's "any appropriate size" disclosure against the asserted 16-gauge ceiling; the passage describes 16 gauge or smaller as embodiments and is the same passage Stratus cites. Appx0644; Appx0210 (19:3-7); OB 65.

The '664 decision left the Racz gauge dispute unresolved but rejected Stratus's 16-gauge premise on its own grounds. Appx0116, Appx0118-0120; *see* Section VI.A.4. Its unchallenged weighing gave Dr. Russo's and Mr. Crosby's filament-size testimony "little weight" because it did "not align with the

disclosure" of the '664 or '782 patent. Appx0117-0118; *see* Section VI.A.2. The '782 patent discloses filaments "between about 0.06 mm and about 1 mm" in diameter (Appx0211 (22:36-40)) and treats 16 gauge as an embodiment (Appx0210 (19:3-7)). The '664 decision's finding that the '664 patent's 16-gauge size is exemplary corroborates the '782 decision's rejection of the ceiling. The same panel's two final '688 decisions track the '782 decision's analysis of Racz's range and likewise rejected the 16-gauge premise. 2026 WL 639675, at *17-18, *20; 2026 WL 637597, at *18-19, *21.

The '782 decision's reasonable-expectation finding rests on its reading of Racz's disclosure (Appx0044) and the findings developed in Section VI.A.2: Dr. Tucker's supported testimony and ordinary skill (Appx0039-0042, Appx0045), and the '782 patent's undisputed manufacturing silence (Appx0042 & n.21). Substantial evidence thus supports each step of the Board's findings: that Racz's range reaches its RF neurotomy embodiments (Appx0044); that it was "not persuaded" by Stratus's "foundational argument that Racz's modified device could not be larger than 16 gauge," disposing of the fabrication argument; and that a POSA would have reasonably expected success in making the proposed combination (Appx0045).

#### 4. The ’664 decision held Stratus to the claims it chose and sustained both claim groups on the petitioned combination.

For the ’664 patent, Stratus’s 16-gauge premise fails for a reason specific to that decision: “no claim of the ’664 patent requires a particular needle or filament size.” Appx0116. The ’664 decision measured reasonable expectation of success against the claimed invention, as *Intelligent Bio-Systems* requires. Appx0115; *see* Section VI.A. The decision’s reading of the petition was correct and, under *Netflix*’s abuse-of-discretion standard, at a minimum, reasonable. 84 F.4th at 1376.

Claims 1-9 and 20-25 impose neither needle-size nor filament-size limits and are not restricted to nerve ablation. Appx0116, Appx0118. The evidence discussed in Section VI.A.2 supports implementing the petitioned combination within that scope. The ’664 decision found motivation to expand and control ablation volume through the combined teachings, and found the proposal “a simple substitution of known components performing known functions to achieve an expected result.” Appx0089, Appx0120-0121. It explained that where the motivation and reasonable-expectation arguments are intertwined, a finding of motivation also supports a finding of reasonable expectation of success. Appx0120-0121 (citing *Elekta*, 81 F.4th at 1376). Section VI.D.2 addresses the ’688 decisions’ preclusive effect as an alternative ground for these claims.

Claims 10-19 and 26-29 recite nerve ablation but no needle or filament size. Appx0116. At OB 70, Stratus expressly says it “did not ask the Board to read a 16-

gauge limit into the claims"; yet its fabrication objections were "premised on a needle no larger than 16 gauge for RF neurotomy procedures." Appx0119; *see* OB 58 (acknowledging that Stratus's expectation-of-success case "rested on a physical premise"). The decision rejected treating the specification's exemplary 16-gauge embodiment as a maximum: Stratus sought no such construction, and the specification supplied neither a definition nor a disclaimer. Appx0120. Stratus answers that the petition's neurotomy purpose, rather than claim construction, imposed the constraint. OB 70-71. The '664 decision's lumen-technique finding answers that objection: the techniques for making lumens in the proposed combination were within a POSA's knowledge. Appx0118. The common evidence in Section VI.A.2 and the simple-substitution finding support a reasonable expectation of success in making that RF neurotomy combination with distal channels, the retained probe, and conductive contact. Appx0121. The decision thus answered Stratus's feasibility objection, contrary to its assertion that the reasoning "answers a question nobody asked." OB 70.

The '664 decision sustained the petitioned combination against Stratus's 16-gauge premise, applying the claims' scope and finding a reasonable expectation of success in making the proposed modification. Appx0115, Appx0118, Appx0120-0121. That ground answers Stratus's changed-combination charge. OB 69-72. The Board had before it Avanos's arguments that the '664 claims were not limited to

neurotomy, as the decision recounted, and that the patent imposed no size limit. Appx0069; Appx1646, Appx1649, Appx1663. As Section VI.A.1 explains, the factual findings identify the same retained-probe combination and neurotomy motivation; the decision did not posit a different non-neurotomy device or substitute another procedure's benefits. Appx0120-0121. That adherence to the petitioned theory and the opportunity to answer the claim-scope arguments satisfy *In re Magnum Oil Tools International, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016), which requires reliance on arguments a party actually advanced and an opportunity for the opponent to respond. And Stratus *did* respond: asked at the hearing how it would "deal with the size issue" for claims not limited to RF neurotomy, it answered on the merits. Appx1106-1108 (61:5-11, 61:24-63:20).

The nerve-claim findings support claim 26 as well.[6] Claim 26 adds the same nerve-ablation steps as claim 10. Appx0270-0271. Avanos supported claims 22-26 with its contentions for the substantially similar limitations of claims 1, 2, 3, and 10, and the decision found that the combination teaches the limitations of claims 22-26. Appx0105-0106. The findings on lumen fabrication and simple substitution

---

[6] The '664 decision once listed claim 26 with claims not limited to nerve ablation—apparently an inadvertent error. Appx0118. Elsewhere it treated claim 26 as a nerve claim "arguably limited to RF neurotomy." Appx0069 n.10, Appx0072, Appx0116. Stratus has not shown that the error affected the outcome, as *Chapman* requires. 595 F.3d at 1338.

therefore establish a reasonable expectation of success in making the proposed device function as a neurotomy needle. Appx0118, Appx0121.

The findings of a reasonable expectation of success were correct and, at a minimum, supported by substantial evidence.

### B. However the Board phrased the rule, its findings in each proceeding satisfy the collective-enablement requirement.

To establish obviousness, the prior art as a whole, including a POSA's background knowledge, must enable a POSA to make the claimed invention. *Raytheon*, 993 F.3d at 1380-1381; *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) ("In order to render a claimed apparatus or method obvious, the prior art must enable one skilled in the art to make and use the apparatus or method.").

The '782 decision stated that "the law does not require that a combination of prior art teachings 'enable' what they render obvious." Appx0041 n.20. The '664 decision stated: "The law does not impose an 'enablement' requirement in regards to a *combination* of references in an obviousness challenge." Appx0124 (emphasis in original). Avanos does not rely on a rule dispensing with collective enablement. Stratus's arguments about reasonable expectation of success and enablement depended on the same asserted factual obstacle—forming filament channels in the cannula wall—and each decision resolved that obstacle on the evidence. Appx0041-0045; Appx0118-0121, Appx0124.

Reasonable expectation of success and enablement concern the claimed invention and the combination of teachings the petitions proposed. *See* Section VI.A.1. The Board's findings establish that ordinary skill supplied the means of implementing that combination. Appx0045; Appx0118, Appx0121. They answer Stratus's Issue 1 and its Summary's assertion that the Board "ducked a critical issue in this case." OB 1, 46-47. Stratus's authorities do not disturb those findings.

**1. Each decision resolved the factual obstacle on which Stratus's enablement objection depends.**

Stratus says the decisions "made no factual findings" on enablement (OB 42; *see also* OB 50, 54) and "never engaged the relevant evidence at all" (OB 57). But each decision engaged the objection on the terms Stratus set: the '782 decision found that Stratus's enablement arguments "appear to be a rehashing of its unpersuasive reasonable expectation of success arguments," and the '664 decision found that Stratus "repackages its lack of reasonable expectation of success argument" as an enablement objection. Appx0041 n.20; Appx0124. The enablement sections of Stratus's Responses cross-referred to the preceding fabrication analysis ("As noted above"; "*See* § IV-D *supra*"). Appx1284; Appx2063. And its Sur-replies addressed Avanos's arguments about reasonable expectation of success insofar as they "could apply to enablement" (Appx0747; Appx1758).

An express enablement finding is not invariably required when existing factual findings resolve the disputed technical obstacle, as *Therasense* illustrates. *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1289, 1297-1298 (Fed. Cir. 2010), *reinstated in relevant part*, 649 F.3d 1276, 1296 (Fed. Cir. 2011) (en banc). Under its "Enablement and Reasonable Expectation of Success" heading, this Court applied clear-error review after a bench trial: the finding of "very low oxygen sensitivity" defeated the enablement objection despite no explicit enablement finding. *Therasense*, 593 F.3d at 1297-1298. The Court then rejected the patentee's reasonable-expectation challenge because it "essentially recycle[d]" rejected contentions about oxygen sensitivity and conventional wisdom concerning the need for a membrane. *Id.* at 1298. Here the direction is reversed: the decisions rejected Stratus's enablement objection as "rehashing" and "repackag[ing]" its resolved reasonable-expectation arguments. Appx0041 n.20; Appx0124.

That focus on the substance of findings also appears in *Elekta*, 81 F.4th at 1376-1377, which concerned motivation and reasonable expectation of success, not enablement. It sustained an implicit finding discernible from the Board's resolution of the patent owner's intertwined objections. *Id.* The nonprecedential *Sandstrom v. Microsoft Corp.*, No. 2024-1040, 2025 WL 40342, at *5 (Fed. Cir. Jan. 7, 2025) (per curiam), likewise looked to the Board's existing factual findings to conclude, in its alternative merits analysis, that the patent owner—who argued that the Board

had not explained how the prior art enabled the claimed inventions—had shown "no reversible error regarding enablement for obviousness purposes."

Here, Stratus has never argued that any reference fails to enable its own disclosure. Its objection was that "Racz, Fitz, and Lee do not, collectively, enable a POSITA to make Racz's modified device." Appx1283; Appx2062. The '782 decision thus *presumed* the individual references enabling and found a reasonable expectation of success in making a cannula with an RF probe and a cannula with deployable filaments, as Racz and Fitz/Lee respectively teach. Appx0040 (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003)). Turning to their combination, it credited Dr. Tucker's supported explanation that a POSA could make it "using ordinary skill and routine engineering" (Appx0039-0041). The decision found the '782 patent's manufacturing silence consistent with that testimony. Appx0042; *see* Section VI.A.2. It rejected the asserted 16-gauge ceiling and concluded that the known features could be combined through ordinary skill. Appx0043-0045; *see* Section VI.A.3.

The '664 decision likewise found the means of forming the lumens within a POSA's knowledge. Appx0118. After considering the whole record, it found a simple substitution of known components performing known functions to achieve an expected result. Appx0121; *see* Sections VI.A.2 and VI.A.4.

Those findings address the fabrication question underlying Stratus's enablement objection: routine engineering and known lumen-forming techniques supplied the means of making the combination. Appx0041-0042; Appx0118, Appx0121. As Section VI.A.2 explains, each decision treated the challenged patents' manufacturing silence as evidence of what a POSA knew. Appx0042; Appx0118. That silence also supports the conclusion that the prior art enabled a POSA to implement the combination. *Epstein*, 32 F.3d at 1568.

Enablement and reasonable expectation of success are distinct requirements. If sustained for the reasons in Section VI.A, the Board's factual findings establish that a POSA could make and use the petitioned combination as claimed without undue experimentation. Appx0042-0045; Appx0117-0118, Appx0121. Their substance—not their label—thus satisfies collective enablement.

**2. Stratus's authorities and asserted omissions provide no basis for reversal or remand.**

Stratus relies on Mr. Crosby's testimony applying the factors of *In re Wands*, 858 F.2d 731, 736-737 (Fed. Cir. 1988). OB 42, 53. Yet none of the seven cases it cites for collective enablement applies the *Wands* factors. OB 53-56. They ask whether the prior art as a whole enables a POSA to make and use the claimed invention. *Raytheon*, 993 F.3d at 1380.

*Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1365 (Fed. Cir. 1998), illustrates the link to reasonable expectation of success: it asked whether

combining references "would suggest to one of ordinary skill in the art how to perform the missing process step with a reasonable likelihood of success," without applying *Wands*.

*Raytheon* likewise focused on whether the claimed invention could be made. Knip, which the patent owner had challenged as non-enabling, was the only supporting reference for the limitation at issue; no other evidence established that a POSA could make the claimed engine, and the patent owner's evidence of non-enablement was unrebutted. *Raytheon*, 993 F.3d at 1381-1382. This Court reversed: the petitioner had "failed to provide an evidence-based case" that Knip enabled the claimed engine, and the Board had "focused only on" whether a POSA could determine power density "without undue experimentation." *Id.* Here, each decision had that evidence. *See* Section VI.B.1.

Stratus's other authorities (OB 53-56) are also unhelpful. *In re Kumar*, 418 F.3d 1361, 1367-1369 (Fed. Cir. 2005), and *In re Payne*, 606 F.2d 303, 314-315 (C.C.P.A. 1979), concerned whether the prior art supplied a way to make the claimed subject matter—aluminum oxide particles and pesticidal compounds, respectively—when an applicant sought to rebut a prima facie case of obviousness. *Kumar* vacated and remanded because the Board introduced new calculations and refused to consider the applicant's responsive expert evidence (418 F.3d at 1367, 1369); *Payne* found the prior art enabling because it suggested an analogous

synthesis route (606 F.2d at 315). *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1471 (Fed. Cir. 1997), likewise sustained a jury's *implicit* enablement determination, against the argument that a reference was "so vague that it is not enabling," on the reference's disclosure comparable in detail to the patent and an expert's explanation of it. *Beckman* only states the rule quoted above; *Therasense* applies it through the findings discussed in Section VI.B.1.

Stratus must also show harm to obtain reversal or remand. *Chapman*, 595 F.3d at 1338. If sustained, the '782 findings on ordinary skill and the 16-gauge premise, and the '664 findings on known lumen-forming techniques and simple substitution, resolve the asserted fabrication obstacle. Appx0041-0045; Appx0118, Appx0120-0121. Those findings satisfy collective enablement, leaving no unresolved fabrication issue for a remand to decide.

Stratus also asserts that Avanos "never addressed enablement." OB 42; *see* OB 53-54. Although the Replies supplied no separate *Wands* analysis, they *answered* the fabrication objection in Stratus's Response pages 43-51 (Appx1277-1285, Appx2056-2064), which included enablement. Appx0640-0644; Appx1660-1664. The '782 decision quoted that answer. Appx0042. Each decision's findings also rest on credited testimony and prior-art evidence, including Dr. Tucker's original explanation. Appx0039-0042; Appx0108, Appx0118, Appx0121.

Section VI.D.2 supplies an alternative ground for ’664 claims 1-9 and 20-25. If sustained, the findings resolve Stratus’s fabrication objection and satisfy collective enablement.

### C. Substantial evidence supports the Board’s findings that Stratus did not show a nexus between its objective evidence and the claimed inventions.

Below, Stratus offered evidence of commercial success, long-felt need, copying, and praise to overcome the showing of obviousness. Appx0047; Appx0130. Each decision correctly found the required connection to the claimed inventions lacking. Appx0047-0050; Appx0130-0133. Such evidence receives substantial weight only if it has a nexus—a connection between the evidence and the claimed invention. *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019). The patentee bears the burden of establishing that connection. *Id.* A rebuttable presumption arises when the evidence concerns a specific product that incorporates the claimed features and is coextensive with the invention. *Id.* Coextensiveness requires a product that “*is* the invention disclosed and claimed.” *Id.* (emphasis in original). The patentee may instead prove that the evidence results directly from the claimed invention’s unique characteristics. *Id.* at 1373-1374.

As an initial matter, Stratus argues—without citing any authority—that the Board erred by requiring a nexus for all four of its objective indicia, including long-felt need, copying, and praise: “[T]hose three objective indicia do not even

have a nexus requirement." OB 84-85. That is an incorrect statement of law. *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) (copying); *Ancora Techs., Inc. v. Roku, Inc.*, 140 F.4th 1351, 1361 (Fed. Cir. 2025) (praise); *In re Karpf*, 758 F. App'x 960, 965 (Fed. Cir. 2019) (long-felt need). Nexus was thus properly the threshold question for all four indicia: without it, none of Stratus's objective evidence could receive substantial weight. *Fox Factory*, 944 F.3d at 1373.

This Court reviews de novo whether the Board's procedures satisfy the APA, *FanDuel, Inc. v. Interactive Games LLC*, 966 F.3d 1334, 1339 (Fed. Cir. 2020), but nexus and coextensiveness determinations are findings of fact, *Campbell Soup*, 10 F.4th at 1277; *see* Section V.

**1. The Board reasonably found that Stratus had not tied its evidence to a specific product that is the claimed invention.**

Each decision found that Stratus's evidence concerned the Nimbus needle, while its chart mapped the claimed RF probe to a separate product. Appx0049-0050; Appx0132. The '782 decision explained, as Avanos had pointed out, that the chart compares claim 1 to the Nimbus device "in combination with a second product"—an RF probe. Appx0049 (emphasis omitted). The '782 decision found that Stratus and Mr. Crosby defined the Nimbus device without that probe. Appx0049. The '664 decision credited Avanos's point that every claim requires a

probe. Appx0132. Both found: "There is a clear disconnect between Patent Owner's position … and its evidence." Appx0049; Appx0132.

Stratus's submissions support that finding. Its Responses identify the Nimbus device as "an FDA-approved RF neurotomy *needle* with deployable tines" and describe probes that Stratus additionally sells for use with it. Appx1247-1248; Appx2026-2027 (emphasis added). Mr. Crosby likewise defines the Nimbus device as the "Multi-tined Expandable Electrode" (i.e., the needle), incorporates the chart, and opines that the device is covered by at least some claims. Appx5179 ¶21. The chart maps the needle together with a probe to '782 claim 1 and their use to '664 claim 1. Appx5271-5273; Appx5278-5280.

Claim 1 of U.S. Patent No. 10,966,782

| | **Claim Language** | **Illustrative Evidence and Notes** |
|---|---|---|
| [1Pre] | A system comprising: | Stratus's Nimbus® RF Multitined Expandable Electrode (Nimbus RF Neurotomy Needle) and Stratus's RF Probe together form a system that meets the limitations of the claimed system as provided below. |
| [1a] | a radiofrequency probe; and | Stratus offers two types of RF probes—reusable and disposable—for use with its needle.<br>Stratus's Reusable RF Probe<br><br>Stratus's Disposable RF Probe<br> |

Appx5271.

At OB 79-81, Stratus treats its element-by-element mapping and the absence of a dispute over embodiment as establishing coextensiveness. But embodiment and coextensiveness are separate requirements. *Fox Factory*, 944 F.3d at 1373-1374, 1377. In *Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th

1202, 1211 (Fed. Cir. 2023), embodiment was undisputed, yet coextensiveness remained "a separate requirement." Each appealed decision stated the same distinction. Appx0048; Appx0131. Stratus's focus on the needle—ostensibly "where all innovative filaments are"—does not eliminate the claims' requirement of a probe. OB 81; Appx0049; Appx0132.

Stratus expressly sought a presumption of nexus based on the asserted coextensiveness of the Nimbus devices with the claims. Appx1307-1308; Appx2086-2087. In a single paragraph, the Responses also attributed commercial success to advantages resulting from the claimed tip and filaments. Appx1308; Appx2087. But Stratus's Sur-replies defended the *presumption* argument, and its opening brief does not develop that causation paragraph as an independent direct-nexus ground. Appx0768; Appx1778-1779; OB 78-87. Each decision stated both routes to nexus and addressed the presumption—as Stratus requested. Appx0047-0050; Appx0130-0133.

Stratus asserts that Avanos did not dispute coextensiveness (OB 82), but Avanos expressly did. Its Replies assumed embodiment for purposes of argument, then challenged whether Stratus's evidence concerned the complete claimed invention. Appx0649-0650; Appx1669-1670. Avanos argued that the sales data could not establish which sales combined a needle and probe and was not coextensive with the invention. Appx0650; Appx1670. Public testimony from

Stratus's witness (Mr. Jorgensen) supported that objection: Stratus offered several electrode versions and six probe product codes; it sold no probes before approximately October 2021, so none of its earlier sales included the probe required by the claims; and its sales data did not distinguish cannula quantities from probe quantities and included *non-covered* devices. Appx4676 (33:8-34:21, 35:21-36:9); Appx4677 (37:2-15); Appx4688 (82:6-17, 83:16-84:17).

At OB 83, Stratus reads the decisions as categorically denying nexus whenever components are sold separately. Each decision instead applied *Fox Factory*'s specific-product requirement to Stratus's definitions, testimony, and chart. Appx0050; Appx0132-0133. Below, Stratus invoked probe reuse, third-party probes, and its assertion that the components need not be sold together. Appx0768; Appx1778-1779. Those answers do not supply the missing correspondence: Stratus tied its evidence to the Nimbus device, which it defined without the claimed probe, and reuse or third-party probes do not make that device, or any specific product, the claimed invention. Appx0049-0050; Appx0132-0133. Each decision noted the absence of authority for Stratus's proposition and found the required correspondence lacking. Appx0050; Appx0133. Stratus still cites none. OB 83.

At OB 86, Stratus's whole-record objection overlooks what each decision considered: Mr. Crosby's incorporated chart, Stratus's definitions, Avanos's Replies, and Stratus's Sur-replies. Appx0048-0050; Appx0131-0133. The '782

decision gave the evidence "no weight," and the '664 decision gave it "little, if any, weight" and balanced the *Graham* factors on that basis. Appx0050; Appx0133-0134.

Stratus's showing for the other indicia also depended on the product connection. Its Sur-replies invoked coextensiveness for long-felt need: "The claims are coextensive with a commercial embodiment that does meet this need." Appx0766; Appx1776. Their assertion that "all praise for Stratus is directly attributable to Nimbus" likewise invokes the same product. Appx0767; Appx1778.

The briefing also supplied notice of the dispute, defeating Stratus's APA/due process argument (OB 82). Stratus argued nexus within its "Commercial Success" section, so Avanos positioned its argument similarly. *Compare, e.g.*, Appx1302, Appx1307-1308, *with* Appx0649. Avanos separately disputed the connection between praise and the claimed invention and argued that the claims extended beyond the asserted need. Appx0645-0646, Appx0648; Appx1665-1666, Appx1668. Stratus answered those objections through coextensiveness and attribution to Nimbus. Appx0766-0767; Appx1776, Appx1778. Thus, the Board did not deprive Stratus of "notice" (OB 82-83) by requiring Stratus to prove a nexus for all four objective indicia and finding Stratus's evidence fell short. *See FanDuel*, 966 F.3d at 1342-1343. Here, the Board assessed the same product-to-claim correspondence Stratus asserted and Avanos disputed. Each decision therefore

properly rejected the presumption because Stratus failed to tie its evidence to a specific product that is the claimed invention.

### 2. Stratus's method-use showing does not resolve the nexus deficiency the Board identified.

Stratus's method argument again treats proof that the claims are practiced by others as proof that a presumption of nexus applies. At OB 85-86, Stratus argues that the '664 claims cover a physician's actions using the needle and probe, and that the Board's treatment of the Nimbus device does not detract from its showing of method practice. But the '664 decision examined the '664 chart's own probe limitation and rejected the product-coextensiveness theory Stratus presented. Appx0131-0133. Stratus cites no authority for treating method practice as resolving that nexus deficiency. OB 85-86.

The chart identifies the needle and probe as used according to the claimed method. Appx5278-5280. Stratus also argued in its Sur-replies that needle sales evidenced use of the full combination because probes could be reused or supplied by third parties. Appx0768; Appx1778-1779.

Those submissions defended the same product-based presumption. The '664 Response asserted coextensiveness with claim 1 and concluded: "The commercial success of the Nimbus device is commercial success of the invention." Appx2086-2087. Claim 1, however, requires "inserting a radiofrequency probe into the lumen of the needle" and "operating the radiofrequency probe, the tip, and the filament as

a monopolar electrode" as steps of the claimed method. Appx0270 (claim 1). The '664 decision addressed precisely that correspondence problem: the chart mapped the probe limitation to an additional product, while the cited testimony concerned the defined Nimbus device. Appx0132. Physician use of the combined components explains how the method is practiced; it does not establish that evidence tied to the defined needle product warrants a presumption of nexus to that method.

To the extent Stratus now proposes a legal exception where method practice alone establishes the presumption without coextensiveness, that new contention is forfeited. Its Response invoked product coextensiveness, and its Sur-reply defended that presumption through combination use; neither presented such an exception. Appx2086-2087; Appx1778-1779. This Court should decline to consider it. *In re Watts*, 354 F.3d 1362, 1367-1368 (Fed. Cir. 2004); *NuVasive*, 842 F.3d at 1380-1381. The preserved argument that needle sales reflect method use is answered on its merits above. Appx1779. It does not cure the deficiency the '664 decision identified. Appx0131-0133.

### D. Alternatively, the unappealed decisions on the related '688 patent preclude Stratus from relitigating the issues they necessarily decided.

Collateral estoppel, or issue preclusion, bars the parties from relitigating an issue of fact or law actually litigated and determined by a valid and final judgment when that determination was essential to the judgment. *B&B Hardware, Inc. v.*

*Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). It applies to final IPR decisions, and it may be raised first on appeal when the preclusive judgment did not exist when the petition was filed. *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1380-1381 (Fed. Cir. 2022). Avanos must establish four elements: an identical issue, actual litigation, a determination essential to a final judgment, and Stratus's full and fair opportunity to litigate. *Id.* at 1381. The ultimate question of collateral estoppel is a legal question. *Id.* at 1380. This Court may affirm on that ground where the Board did not reach it. *Papst Licensing GmbH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1246, 1249, 1251-1253 (Fed. Cir. 2019).

The March 2026 '688 decisions reference the earlier-filed petitions here, 2026 WL 639675, at *1; 2026 WL 637597, at *1, and are unappealed and final. OB xii-xiii. Stratus had a full and fair opportunity to litigate: the same parties litigated all four proceedings before one panel through responses, sur-replies, and a joint hearing. 2026 WL 639675, at *1; 2026 WL 637597, at *1; Appx1046-1047. Stratus stated: "Every challenge ground of every IPR is based on the same proposed combination of Racz, Fitz, and Lee …." Appx1253; Appx2032. Stratus litigated both nexus and manufacturing on the same evidence in all four proceedings. *Compare* 2026 WL 639675, at *17, *22-23, *and* 2026 WL 637597, at *18, *23-24, *with* Appx0043, Appx0049-0050, *and* Appx0111, Appx0117, Appx0132 (each citing the same witness testimony and claim chart exhibit). Each '688 decision

rejected Stratus's presumption of nexus. 2026 WL 639675, at *22-23; 2026 WL 637597, at *23-24. Each also rejected its objection that filament channels were too thin to manufacture for neurotomy. 2026 WL 639675, at *17; 2026 WL 637597, at *18. Stratus also pressed its manufacturing objection for non-neurotomy claims at the hearing. Appx1106 (61:5-22). Each preclusion argument therefore turns on identity of issue and necessity.

Preclusion resolves the nexus issue for all four indicia in both appeals and the common manufacturing issue underlying reasonable expectation of success for '664 claims 1-9 and 20-25. Those manufacturing findings also support the collective-enablement analysis in Section VI.B. For the '782 claims and '664 claims 10-19 and 26-29, Section VI.A resolves the neurotomy-specific issues on the merits.

#### 1. The '688 nexus findings preclude Stratus's nexus challenge in both appeals.

Stratus seeks to relitigate the identical nexus issue resolved in both '688 proceedings. At OB 78, Stratus describes the appealed disposition as a "single threshold ruling" covering long-felt need, copying, praise, and commercial success. The '688 decisions resolved that same threshold issue, for the same four indicia, in the same way: the charts failed to map the required probe to the Nimbus product. *Compare* 2026 WL 639675, at *21-23, *and* 2026 WL 637597, at *22-24, *with* Appx0047-0050, *and* Appx0130-0133.

Each ’688 decision addressed Mr. Crosby’s paragraph 21, his incorporated claim charts, the required RF probe, and Stratus’s definition of the Nimbus device as the needle. Both recognized that the charts compared the claimed invention to the needle combined with a separate probe. But each ’688 decision found that, for the probe limitation, “the claim chart fails to map any portion of the Nimbus device.” 2026 WL 639675, at *23; 2026 WL 637597, at *24. After addressing Stratus’s response that the components need not be sold together, each ’688 decision concluded: “Accordingly, Patent Owner has failed to show that its objective indicia evidence bears a nexus to the claimed invention, and we give it no weight.” 2026 WL 639675, at *23; 2026 WL 637597, at *24.

As Section VI.C.1 shows, the appealed decisions resolved the same product-correspondence dispute. The ’782 decision addressed the same needle-and-probe mapping and gave the evidence no weight. Appx0047-0050. The ’664 decision likewise found no nexus and gave the evidence “little, if any, weight.” Appx0130-0133. Each ’688 decision recites the same product-correspondence objection and separate-sale response addressed in the appealed decisions. *Compare* 2026 WL 639675, at *22-23, *and* 2026 WL 637597, at *23-24, *with* Appx0048-0050, *and* Appx0131-0133. Nexus supplied each decision’s reason for withholding weight and was necessary to the ’688 judgments: each rejected all four indicia on that

basis before finding the claims obvious. 2026 WL 639675, at *23; 2026 WL 637597, at *24.

Claim differences did not change the nexus issue Stratus presented. Claim identity is unnecessary when the differences do not materially alter the question decided. *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). In each appealed proceeding, Stratus made the same nexus argument, in nearly identical words, resting on claim 1. *Compare* Appx1307-1308, *with* Appx2086-2087. The ’782 system claims, the broader ’688 claims, and the ’664 method claims differ, but the nexus rulings all addressed the same needle-plus-probe correspondence and the same testimony from Mr. Crosby and incorporated charts. Appx0048-0050; Appx0131-0133; Appx5271-5280; 2026 WL 639675, at *17, *22-23; 2026 WL 637597, at *18, *23-24.

Stratus emphasizes that the charts include the probe and that Mr. Crosby incorporated them. OB 79-83. They do, and he did. Appx5179 ¶21; Appx5271-5280. The ’688 claim-1 chart expressly maps the needle and probe together, just as the ’782 and ’664 charts do. Appx5274-5278; Appx5271-5273; Appx5278-5280. But each ’688 decision considered the same needle-and-probe mapping and found it insufficient to establish the asserted nexus. 2026 WL 639675, at *22-23; 2026 WL 637597, at *23-24. Even if that assessment were wrong, error “does not

prevent preclusion." *B&B Hardware*, 575 U.S. at 157. The remedy for error is judicial review, *id.*, which Stratus did not seek for the '688 decisions.

Stratus's method argument relies on the combined needle and probe practicing the invention. OB 85-86. Its '664 chart shows physicians using needle and probe together; its Sur-replies tied needle sales to that use. Appx5278-5280; Appx0768; Appx1778-1779. The '688 nexus determinations addressed that same connection between the objective evidence and the combined components. 2026 WL 639675, at *22-23; 2026 WL 637597, at *23-24. The IPR2024-01210 decision also held method claims 51 and 52 unpatentable; they require use of the claim-1 system and, in claim 52, insertion of the probe into the needle's lumen. 2026 WL 639675, at *25. Its nexus ruling thus underlies a judgment on method claims as well as system claims. *Id.* at *23, *25.

Each '688 decision recognized direct proof and a presumption as routes to nexus and resolved Stratus's product-coextensiveness presumption. 2026 WL 639675, at *22-23; 2026 WL 637597, at *23-24. The appealed decisions did the same. Appx0048-0050; Appx0131-0133. *See* Section VI.C.1 (noting Stratus does not press the Responses' causation paragraph on appeal).

Thus, the '688 decisions' necessary resolution of the identical nexus issue precludes Stratus's nexus challenge and its asserted basis for remanding to weigh all four indicia in both appeals.

### 2. The ’688 decisions’ reasonable-expectation-of-success determination precludes Stratus’s challenge for ’664 claims 1-9 and 20-25.

The ’688 claims and ’664 claims 1-9 and 20-25 are not limited to neurotomy or to a needle size. Appx0069 n.10; Appx0072; Appx0118; 2026 WL 639675, at *17; 2026 WL 637597, at *18. Each ’688 decision concluded that “there would have been a reasonable expectation of success in making the proposed combination, as the prior art features were known and could have been combined through ordinary skill in the art.” 2026 WL 639675, at *18; 2026 WL 637597, at *19.

The ’664 decision resolved the same question of whether a POSA would reasonably expect to manufacture the proposed combination with peripheral filaments while retaining Racz’s central RF probe. The Board found that ordinary skill supplied the manufacturing techniques and that known components could perform their established functions in the proposed combination. Appx0118-0121.

The ’688 judgments required the affirmative reasonable-expectation finding. The necessity requirement applies even when a decision gives alternative grounds. *Comair Rotron, Inc. v. Nippon Densan Corp.*, 49 F.3d 1535, 1538-1539 (Fed. Cir. 1995). Each ’688 decision rejected the size objection for broader applications: “For this reason alone, Patent Owner’s arguments about the channels being too thin to manufacture for neurotomy applications are not persuasive.” Each then turned to

Racz: "In any event, Petitioner replies with persuasive evidence that 16 gauge is *not* the maximum size for neurotomy." 2026 WL 639675, at *17; 2026 WL 637597, at *18. Either route required the affirmative reasonable-expectation finding quoted above. Each decision also incorporated that finding when addressing '688 claim 1's fitting "configured to allow for insertion of the RF probe into the lumen through the fitting": "we are persuaded that a POSA would have had a reasonable expectation of success in making Racz's modified device, which would include preserving the removable RF probe function present in Racz's native device." 2026 WL 639675, at *19-20; 2026 WL 637597, at *20-21. That shared determination is the precluded issue.

Stratus argues that the petitions confined the proposed combination to neurotomy. OB 69-72. Section VI.A.4 answers that objection about the scope of the petitions. But the common determination that ordinary skill could implement the retained-probe combination precludes Stratus's manufacturing challenge for '664 claims 1-9 and 20-25.

Each '688 decision stated that the collective-enablement arguments "appear to be a rehashing of its unpersuasive reasonable expectation of success arguments." 2026 WL 639675, at *16 n.20; 2026 WL 637597, at *17 n.19. Avanos invokes preclusion of the necessarily resolved factual issue—whether ordinary skill could implement the retained-probe combination—not a separate collective-enablement

determination. For ’664 claims 1-9 and 20-25, Stratus may not relitigate that fabrication obstacle under a different legal label. Section VI.B answers the separate legal question whether those findings satisfy collective enablement.

## VII. CONCLUSION

Avanos respectfully requests that this Court affirm the ’782 decision (IPR2024-01209) and the ’664 decision (IPR2024-01212).

If this Court finds a ground requiring relief, the relief should be confined to the affected issues and claims. The unaffected claims and issues, including the issues the ’688 decisions preclude (Section VI.D), should remain undisturbed.

/s/ *Warren J. Thomas*
Warren J. Thomas
Gregory J. Carlin
Meunier Carlin & Curfman LLC
999 Peachtree St. NE, Suite 1300
Atlanta, GA 30309
(404) 645-7700
wthomas@mcciplaw.com
gcarlin@mcciplaw.com

*Counsel for Appellee Avanos Medical, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations** **Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1795; 26-1797

**Short Case Caption:** Stratus Medical, LLC v. Avanos Medical, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☐ the filing has been prepared using a proportionally-spaced typeface and includes 13959 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 11/10/2026

Signature: /s/ Warren J. Thomas

Name: Warren J. Thomas

Save for Filing